Dr. Sahar Jalili Pawelski, Esq.
WA Bar #54922
Yara Migration Dreams
15303 Ventura Blvd, Suite 900
Sherman Oaks, CA 91403
Phone (818) 629-1611


Attorney for Petitioner


## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION


| | |
|---|---|
| **MAHDI TAJIK**<br><br>**Petitioner,**<br><br>v.<br>**Warden** of El Valle Detention Center, in their official capacity; **BRET BRADFORD**, Supervisory ICE Official, in his official capacity, **TODD M. LYONS,** Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; and, **KRISTI NOEM**, Secretary of the Department of Homeland Security, in her official capacity.<br><br>**Respondents.** | Case No. _____<br><br>Agency No. A241-380-775<br><br><br>**PETITION FOR WRIT OF HABEAS CORPUS (Under 28 U.S.C. § 2241)** |

## I.    INTRODUCTION

1.    Mahdi Tajik entered the United States with his mother, Narges Hosseini, through CBP One on November 9, 2024, and was separated from her by the government upon entry because he was over the age of 21. He has remained in civil immigration detention since that date, now approximately 442 days, including nine months after a removal order issued on May 2, 2025, while his appeal and motion to remand, filed June 2, 2025, remain pending. At no point has Mr. Tajik received a constitutionally adequate, individualized custody determination or been found to be a danger or flight risk.

2.    Mr. Tajik's detention continues without any foreseeable end and solely due to prolonged appellate proceedings and agency inaction. In the absence of any meaningful custody review, his confinement has ceased to serve a regulatory purpose and now operates as punishment by default.

3.    Mr. Tajik suffers from serious, documented medical conditions, including trauma-induced diabetes mellitus and internal injuries consistent with physical abuse. A treating specialist has warned that a delay in care risks severe and irreversible harm. Respondents have continued his detention despite actual notice of these medical vulnerabilities.

4.    This detention occurs in the context of judicially recognized political persecution. Mr. Tajik fled Iran with his mother, a political dissident, after both were charged and convicted together based on allegations involving IRGC officers and her IRGC-connected former husband. An Immigration Judge later credited Ms. Hosseini's testimony and medical evidence and granted her asylum, confirming the persecutory nature of the charges and the use of detention as a tool of punishment. Yet while the government has protected the mother, it continues to detain the son, indefinitely and without individualized justification.

2

5. Mr. Tajik does not seek review of his removal order or any discretionary immigration determination. He challenges only the constitutionality of his continued civil detention without meaningful custody review, in violation of the Due Process Clause of the Fifth Amendment.

## II.    CUSTODY

6. Petitioner Mahdi Tajik is in the physical custody of Respondent, the Warden of the El Valle Detention Center in Raymondville, Texas. At the time of the filing of this Petition, Petitioner is detained at El Valle Detention Center, a facility that contracts with the Department of Homeland Security ("DHS") through U.S. Immigration and Customs Enforcement ("ICE") to detain noncitizens in immigration proceedings.

7. Petitioner is detained pursuant to the Immigration and Nationality Act and remains under the direct control and supervision of Respondents, the Warden of the El Valle Detention Center, Bret Bradford, supervisory official of U.S. Immigration and Customs Enforcement ("ICE") with authority over immigration detention operations in the region that includes El Valle Detention Center.

8. In his official capacity, Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement, and Kristi Noem, Secretary of the Department of Homeland Security, as well as their agents and employees. Respondents exercise exclusive authority over Petitioner's detention, custody status, and conditions of confinement.

## III.    VENUE

9. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 2241 because Petitioner is physically confined at El Valle Detention Center in Raymondville, Texas, which is located within this District. Petitioner's immediate custodian, the Warden of El Valle

3

Detention Center, exercises day-to-day control over Petitioner's confinement within this District.

10. Because Petitioner is detained in this District and seeks relief from his present physical custody, this Court is the proper venue to adjudicate this Petition.

## IV.    JURISDICTION

11. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* This Court has jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 because Petitioner is presently in federal custody and challenges the lawfulness of that custody under the Fifth Amendment to the United States Constitution.

12. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action presents a federal question arising under the Constitution and laws of the United States. Jurisdiction is further supported by Article I, Section 9, Clause 2 of the United States Constitution (the Suspension Clause), which guarantees that the writ of habeas corpus shall not be suspended except in cases of rebellion or invasion.

13. Petitioner does not seek review of a final order of removal, the denial of asylum, or any discretionary immigration determination. He challenges only the constitutionality of his continued civil detention and the government's refusal to provide the procedural safeguards required by due process.

14. This Court has authority to grant relief pursuant to 28 U.S.C. § 2241 and the All Writs Act, 28 U.S.C. § 1651.

## V.    PARTIES

15. Petitioner Mahdi Tajik is a native and citizen of Iran currently detained by U.S. Immigration and Customs Enforcement ("ICE") at El Valle Detention Center in Texas.

4

16. Respondent WARDEN OF EL VALLE DETENTION CENTER is Petitioner's immediate custodian and exercises day-to-day control over Petitioner's confinement. The Warden is sued in his or her official capacity.

17. Respondent Bret Bradford is a supervisory official of U.S. Immigration and Customs Enforcement with authority over immigration detention operations in the region that includes El Valle Detention Center. In his official capacity, Respondent Bradford exercises authority over Petitioner's continued detention and the implementation of custody and release decisions. He is sued in his official capacity.

18. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement, the agency responsible for the custody, detention, and supervision of noncitizens in removal proceedings.

19. Respondent Kristi Noem is the Secretary of the Department of Homeland Security, the federal department with ultimate authority over immigration detention and enforcement.

20. Each Respondent is sued in their official capacity.

## VI.    PROCEDURAL AND DETENTION HISTORY

21. November 9, 2024. Petitioner Mahdi Tajik entered the United States through the CBP One process together with his mother, Narges Hosseini, after fleeing Iran. Although Petitioner was over 21, they presented together and were separated by the government upon entry. Petitioner was immediately taken into immigration custody and has remained continuously detained since that date.

22. December 9, 2024. The Department of Homeland Security ("DHS") issued a Notice to Appear, placing Petitioner in removal proceedings.

23. Petitioner remained detained throughout his immigration proceedings, which continued before the Immigration Court while he remained in DHS custody.

24. May 2, 2025. An Immigration Judge issued a removal order against Petitioner.

25. June 2, 2025. Petitioner timely filed a Notice of Appeal and Motion to Remand based on his mother's granted Asylum from the Laredo EOIR, with the Board of Immigration Appeals ("BIA"). That appeal and motion remain pending, and no final administrative decision has been issued.

26. Since the filing of his appeal, Petitioner has remained detained for approximately 9 months following the removal order, without any individualized custody determination or finding that his continued detention is necessary to effectuate removal.

27. The Motion to Remand filed in Petitioner's case documents that Petitioner and his mother were politically targeted, charged, and convicted together in Iran based on allegations involving IRGC officers and her IRGC-connected former husband, and further documents that an Immigration Judge credited Ms. Hosseini's testimony and corroborating medical evidence and granted her asylum. Those findings form part of the administrative record currently before the BIA.

28. Despite the government's recognition of the family's persecution as reflected in the asylum grant to Petitioner's mother, Respondents have continued to detain Petitioner without conducting any meaningful custody review or reassessing whether detention remains justified.

29. At no point during Petitioner's approximately 442 days of continuous detention has any adjudicator found that he poses a danger to the community or a risk of flight. His continued confinement is attributable solely to prolonged appellate proceedings and the absence of any constitutionally adequate custody determination, leaving him detained with no foreseeable end.

## VII.    MEDICAL HARM DURING DETENTION AND RESPONDENTS' ACTUAL NOTICE

30. While continuously detained, Mr. Tajik has suffered from serious and chronic medical conditions directly linked to trauma and physical abuse. A specialist in internal medicine and endocrinology diagnosed Mr. Tajik with diabetes mellitus caused by severe psychological stress, chronic stress, and prolonged malnutrition, conditions that developed as a result of sustained abuse. The physician further documented internal gastrointestinal injuries caused by physical trauma, including findings consistent with internal bleeding and tissue damage.

31. The treating specialist determined that Mr. Tajik requires regular therapeutic follow-ups, precise blood-sugar control, specialized medical care, and psychological and psychiatric support, and expressly warned that any delay in treatment could result in the progression of complications and the emergence of more severe outcomes, including irreversible harm. These medical findings establish that prolonged detention, where consistent, specialized care is limited, poses a substantial and ongoing risk to Mr. Tajik's health.

32. Respondents have had actual notice of these medical conditions and risks. Through counsel, Mr. Tajik submitted medical documentation and repeatedly communicated with ICE Enforcement and Removal Operations ("ERO") regarding his diagnosis, the trauma-related nature of his condition, and the medical necessity of consistent care incompatible with prolonged detention.

33. Counsel specifically contacted ERO officials to request medical attention and to seek reconsideration of custody in light of Mr. Tajik's documented medical vulnerabilities. These communications placed Respondents on notice that continued detention exposed Mr. Tajik to a serious risk of harm.

7

34. Despite this actual notice and despite medical warnings that delay in treatment could lead to severe and irreversible consequences, Respondents continued to detain Mr. Tajik without conducting any individualized custody determination or reassessing whether detention remained constitutionally permissible.

35. Continued civil detention under these circumstances has exacerbated Mr. Tajik's physical and psychological harm, transforming detention into a punitive measure rather than a regulatory one. Detention persists not because it is medically or legally appropriate, but because Respondents have failed to meaningfully evaluate alternatives to confinement despite known risks.

### VIII.   CONTINUED DETENTION ARBITRARILY DISREGARDS PRIOR JUDICIAL FINDINGS OF PERSECUTION

36. Petitioner's continued detention is arbitrary in light of official judicial findings of political persecution that directly involve Petitioner himself and that are now part of the administrative record before the Board of Immigration Appeals.

37. As set forth in Petitioner's pending Motion to Remand, an Immigration Judge granted asylum to Petitioner's mother, Narges Hosseini, on September 23, 2025, after expressly crediting her testimony and corroborating medical and documentary evidence. The Immigration Judge found that Ms. Hosseini was subjected to severe political persecution by Iranian authorities and by her former husband, a regime-aligned official, and that detention and abuse were used as tools of punishment and control.

38. The Motion to Remand further documents that Petitioner and his mother were targeted, charged, and convicted together by Iranian authorities. A certified Iranian Revolutionary Court judgment, issued on September 30, 2024, names Mahdi Tajik personally and

convicts him in absentia of multiple political and national security offenses, including moharebeh (enmity against God), and imposes severe criminal penalties.

39. These adjudicated facts confirm that Petitioner is the subject of an active, state-sponsored political prosecution, not a private family dispute. They also establish ongoing government interest in the Petitioner based on imputed political opinion and family association.

40. Despite these validated findings, Respondents continue to detain Petitioner without any individualized custody determination and without reassessing whether detention remains justified. The government has thus taken internally inconsistent positions—litigating the same persecution as dispositive before the BIA while treating Petitioner's detention as routine and indefinite.

41. Civil detention that proceeds in disregard of official findings confirming political persecution and ongoing state interest is not regulatory. It is arbitrary, and it cannot be sustained consistently with due process.

## IX.   LEGAL STANDARD AND ENTITLEMENT TO RELIEF

**A. Prolonged § 236 Detention Requires Meaningful Custody Review.**

42. Civil immigration detention is constitutional only so long as it remains regulatory in purpose and is accompanied by adequate procedural safeguards. Detention that becomes prolonged without an individualized determination that continued confinement is necessary violates the Due Process Clause of the Fifth Amendment.

43. Regardless of the statutory provision under which detention is nominally authorized, due process requires that continued civil confinement be justified by an individualized assessment of flight risk or danger to the community. Detention may not persist by default, due to inertia, or for administrative convenience.

9

44. Where detention becomes prolonged, and removal is not imminent, the Constitution requires a meaningful opportunity for custody review before a neutral decisionmaker, at which the government bears the burden of justifying continued detention.

**B. Agency Statutory Labels Do Not Eliminate Due Process Protections**

45. Respondents may contend that Petitioner's detention is governed by INA § 241 based on the issuance of a removal order. However, statutory labels do not override constitutional requirements. The Fifth Amendment imposes independent limits on civil detention regardless of the detention statute invoked.

46. Where, as here, removal is not reasonably foreseeable due to pending appellate proceedings, continued detention without individualized custody review cannot be justified solely by reference to a removal order. Detention that lacks a foreseeable endpoint and proceeds without procedural safeguards exceeds constitutional bounds.

47. The government may not rely on the existence of a removal order to justify indefinite or prolonged detention where administrative proceedings remain ongoing, and no mechanism exists to assess whether continued confinement remains necessary

**C. Habeas Relief Is Appropriate Where No Custody Review Mechanism Exists**

48. Petitioner does not seek review of a removal order, the denial of asylum, or any discretionary immigration determination. He challenges only the lawfulness of his continued civil detention and the government's failure to provide constitutionally required procedural safeguards.

49. Where administrative processes provide no meaningful mechanism for individualized custody review, and detention continues without justification or foreseeable end, habeas

10

corpus relief under 28 U.S.C. § 2241 is appropriate and necessary to prevent unconstitutional confinement.

50. Under these circumstances, this Court has both the authority and the obligation to order relief to restore the constitutional limits on civil detention.

## X.    DUE PROCESS VIOLATIONS ARISING FROM PROLONGED DETENTION WITHOUT CUSTODY REVIEW

51. Civil immigration detention is constitutional only so long as it remains regulatory in purpose and is accompanied by meaningful procedural safeguards. When detention is prolonged and lacks individualized justification, it violates the Fifth Amendment.

52. Mr. Tajik's detention has crossed that constitutional line. He has been detained continuously since November 9, 2024, including for approximately 9 months after a removal order, while his appeal and motion to remand remain pending before the Board of Immigration Appeals. His continued confinement has no foreseeable end and is not tied to any imminent removal.

53. Throughout more than 442 days of detention, no adjudicator has ever found Mr. Tajik to be a danger to the community or a risk of flight. Nor has any adjudicator conducted a constitutionally adequate, individualized custody determination to assess whether continued detention is necessary, considering his circumstances.

54. Mr. Tajik's continued detention is not attributable to any delay or conduct on his part. It is the direct result of prolonged appellate proceedings and the absence of any mechanism by which his custody can be meaningfully reviewed. Detention has therefore persisted by default rather than by lawful determination.

55. The constitutional deficiencies of Mr. Tajik's detention are compounded by his serious medical vulnerabilities, which are documented and known to Respondents. Continued

11

confinement without reassessment in the face of such medical risk transforms detention from a regulatory measure into a punitive one.

56. These due process violations are further underscored by the government's own recognition of the political persecution suffered by Mr. Tajik's family, as reflected in the grant of asylum to his mother. Despite this recognition, Respondents have continued to detain Mr. Tajik without individualized justification, perpetuating detention that no longer serves any legitimate immigration purpose.

57. The Constitution does not permit prolonged civil detention without meaningful custody review, individualized justification, and a foreseeable end to confinement. Under these circumstances, Mr. Tajik's continued detention violates due process and requires judicial intervention.

## XI.    RELIEF REQUESTED

WHEREFORE, Petitioner Mahdi Tajik respectfully requests that this Court:

1. Grant the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.
2. Declare that Petitioner's continued detention without a constitutionally adequate, individualized custody determination violates the Due Process Clause of the Fifth Amendment.
3. Order Respondents to provide Petitioner with an immediate individualized bond hearing before a neutral adjudicator, at which:
    - The government bears the burden of justifying continued detention.
    - Petitioner's medical condition, length of detention, and procedural history are meaningfully considered; and
    - Less restrictive alternatives to detention are evaluated.

That completes the logic.

12

## XII.    VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

01/30/2026

DATE                                                                    Dr. Sahar Jalili Pawelski, Esq.

13